## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

FAMILY HEALTH PHYSICAL MEDICINE,    *
LLC

Plaintiff,                                              *

v.                                                         *         Civil Action No. SAG-21-2095

PULSE8, LLC, *et al.,*                               *

Defendants.                                          *
                                                           ***

## <u>MEMORANDUM OPINION</u>

Plaintiff Family Health Physical Medicine, LLC ("Family Health") filed this action alleging violations of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA") and the Maryland Telephone Consumer Protection Act, Md. Code Ann., Com. Law §§ 14-3201-3202 ("MD TCPA"), based upon a fax it received from Defendants Pulse8, LLC and Pulse8, Inc. (together, "Pulse8"[1] or "Defendants").[2]  ECF 1.  Pulse8 has filed a Motion to Dismiss the Complaint for failure to state a claim, incorporating a Rule 23(c)(1) Motion to Strike the Class Allegations.  ECF 15.  Family Health filed an opposition, ECF 22, and Pulse8 filed a reply, ECF 24.  A hearing is not necessary.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons that follow, Pulse8's motion shall be granted and Family Health's claims shall be dismissed without prejudice.

---

[1] In August, 2020, Pulse8, Inc. converted to Pulse8, LLC.  ECF 15-1 at 7 n.1.  Defendants argue, therefore, that Pulse8, LLC is the only proper defendant.  Whether or not that is legally correct, this Court will simply refer to the Defendants as "Pulse8."

[2] Family Health concedes that Count II of its complaint, brought pursuant to the MD TCPA, is properly subject to dismissal.  ECF 22 at 1 n.1.  This Court will grant Pulse8's motion to dismiss that Count without further analysis.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

According to its Complaint, Family Health is an Ohio limited liability company.  ECF 1 ¶ 12.  On or about August 13, 2020, it received a fax on its telephone facsimile machine ("the Fax") inviting recipients to attend a "Monthly Webinar Series" entitled "Open your Mind to Behavioral Health Coding."  *Id.* ¶¶ 15-16.  The Fax stated that the attendees of the webinar can "[e]xpand [their] knowledge by learning how to successfully document and code conditions that are due to substance abuse, major depression, schizophrenia, bipolar, and other mental health disorders."  *Id.* ¶ 16.  The Fax also provided a link to register for the webinar and to win an Amazon gift card by completing a webinar survey.  *Id.*

The Complaint alleges that Pulse8, the sender of the Fax, is a for-profit business selling a variety of products to health care providers, including "Coding Technology" for use in obtaining insurance reimbursement.  *Id.* ¶ 14.  The Complaint posits that the webinar advertised in the Fax "relates to Defendants' for-profit business" of selling coding technology.  *Id.* ¶ 18.  The Complaint also alleges that the Fax is "pretext" for further advertising because attendees registering for the webinar had to agree that Pulse8 could use their personal data to deliver future promotional information.  *Id.* ¶ 19.  The Complaint does not contain any factual allegations regarding the specific content shared with webinar attendees.

## II.   STANDARDS OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to test the legal sufficiency of a complaint by way of a motion to dismiss.  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  *See In re Birmingham*, 846 F.3d at 92.

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id*. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' ....") (citation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011).[3]

## III.  DISCUSSION

The TCPA prohibits sending an "unsolicited advertisement" to a telephone facsimile machine, absent certain conditions. 47 U.S.C. § 227(b)(1)(C). The statute defines "unsolicited advertisement" in relevant part as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person." *Id.* § 227(a)(5).

The operative questions, then, are first, whether the Fax advertises "the commercial availability or quality of any property, goods, or services" and second, what standard this Court should apply to answer that question. These legal issues were previously examined in *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, Civil Action No. 3:15-14887, 2016 WL 5799301 (S.D.W. Va. Sept. 30, 2016) ("*PDR I*"), the first in an extensive series of litigation winding up to

---

[3] Although Pulse8's motion asks in the alternative that Family Health's class allegations be stricken, this Court's disposition of Pulse8's motion to dismiss renders consideration of those arguments unnecessary.

the Supreme Court and back. *PDR I* involved an unsolicited fax, sent to a West Virginia chiropractic office, offering the recipient a free copy of the "Physicians' Desk Reference eBook." *Id.* at *1. The plaintiff alleged that the fax constituted an advertisement on its face and a pretext to future advertising, because the distribution of the eBook was intended to lead to future sales of other goods and services to benefit its sender, PDR Network, the publisher of the "Physicians' Desk Reference eBook." *Id.*

In *PDR I*, United States District Judge Robert C. Chambers held that the fax was not an unsolicited advertisement because it was advertising something free and, therefore, lacked "[t]he essential commercial element of an advertisement[.]" *Id.* at *3. Nonetheless, the plaintiff in *PDR I* "strenuously urge[d]" the district court to defer to a 2006 order from the Federal Communications Commission ("the 2006 FCC Order"), which interpreted the TCPA's definition of "unsolicited advertisement." *Id.* at *3. The 2006 FCC Order expressly states that "facsimile messages that promote goods or services even at no cost . . . are unsolicited advertisements under the TCPA's definition." Rules and Regulations Implementing Tel. Consumer Prot. Act of 1991, 71 Fed. Reg. 25, 967, 25, 873 (May 3, 2006). Relying on the *Chevron* framework for judicial review of administrative rules, Judge Chambers concluded that because the TCPA's definition of "unsolicited advertisement" is clear and unambiguous, the court was not required to defer to the FCC's interpretation. *PDR I*, 2016 WL 5799301, at *4 ("The Court is not obliged to defer to the FCC's interpretation of an unambiguous statute."). Therefore, in the absence of plausible allegations that PDR Network would benefit commercially from offering free eBooks to the facsimile recipients, Judge Chambers dismissed the complaint without granting leave to amend. *Id.* at *5.

5

On appeal, the Fourth Circuit held that Judge Chambers erred by conducting a *Chevron* analysis, because the Hobbs Act required the district court to adopt the FCC's interpretation of the TCPA. *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 883 F.3d 459, 464 (4th Cir. 2018) ("*PDR II*"). The Supreme Court subsequently granted certiorari, and ultimately held that the lower courts needed to resolve certain preliminary questions before it could determine whether the 2006 FCC Order bound the lower courts. *PDR Network LLC v. Carlton & Harris Chiropractic, Inc.*, ___ U.S. ___, 139 S. Ct. 2051, 2055 (2019) ("*PDR III*"). With respect to one of those preliminary questions, the Supreme Court suggested that if the 2006 FCC Order constitutes only an interpretive rule that lacks the force and effect of law, lower courts may not be bound by its contents. *Id.* at 2055-56.

After the Supreme Court ruling, the Fourth Circuit agreed with both parties that the relevant portions of the 2006 FCC Order are interpretive, such that a district court is not bound to follow them. *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 982 F.3d 258 (4th Cir. 2020) ("*PDR IV*"). The Fourth Circuit remanded the case to Judge Chambers to consider the appropriate degree of deference to be afforded to the agency's interpretation of the TCPA under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). *PDR IV*, 982 F.3d at 265-66. Judge Chambers recently issued his opinion. *See Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, Civil Action No. 3:15-14887, 2022 WL 386097 (S. D. W.Va. Feb. 8, 2022) ("*PDR V*"). He first found that the TCPA was unambiguous in its requirement that an advertisement relate to the buying and selling of goods or services. *Id.* at *3, 4. Thus, he determined, "[b]y its terms, the TCPA requires a commercial element to find that an unsolicited fax is an advertisement." *Id.* at *4. He reasoned that, in the absence of any statutory ambiguity, he need not resort to the interpretive 2006 FCC Order to determine the TCPA's meaning. However, quoting the Fourth Circuit, he noted that even

if he had considered the order, he would not have afforded it much deference after weighing "the degree of the agency's care, its consistency, formality, and relative expertness, and . . . the persuasiveness of the agency's position." *Id.* at *5-6 (quoting *PDR IV*, 982 F.3d at 264-65). In Judge Chambers's view, the 2006 FCC Order "is 'not written in the manner of a conventional regulation.'" *Id.* at *5 (quoting *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharms.*, *Inc.*, 847 F.3d 92, 100 (2d Cir. 2017) (Leval, J., concurring)). Judge Chambers further reasoned that the order "has a striking absence of reasoning regarding its categorical conclusion that faxes promoting goods and services even at no cost are unsolicited advertisements under the TCPA." *Id.* He concluded that the 2006 FCC Order, then, is entitled to no deference. *Id.* at *6.

This Court concurs with Judge Chambers's persuasive assessment of the deference to be afforded the 2006 FCC Order. Certainly, the motivating policy behind the FCC's expansive interpretation is clear: to prevent businesses from exploiting an obvious loophole in the TCPA's protections by sending faxes that advertise a non-commercial, complimentary item or event with the intent to use the complimentary offering to further the business's commercial purposes.[4] But

---

[4] As other courts have noted, the 2006 FCC Order does not clearly delineate the breadth of its preferred interpretation. The order apparently contemplates imposing liability under some circumstances even where the commercial purpose does not appear on the face of the fax. That said, reading it to prohibit a for-profit company from sending any unsolicited faxes whatsoever would seem to disregard the plain language Congress included in the TCPA. But any interpretation between these two poles would involve a seemingly arbitrary exercise in "line-drawing" to determine the nexus or degree of commercial purpose a company must have in order to violate the statute. In other words, must the company try to sell its products at the webinar in order to connect the fax to marketing purposes? What if it simply collects the contact information from webinar attendees for potential marketing months or years later? What if it never markets anything to the attendees but sells the attendees' contact information to another company to make a profit? What if it simply uses the free webinar to increase its name recognition in the industry, in the hopes of increasing its market share without engaging in any direct sales efforts? Congress's choice of narrow language in the TCPA, restricting its prohibition to "any material advertising the commercial availability or quality of any property, goods, or services," may have intentionally sacrificed broader protection from uninvited faxes in favor of a clear, bright-line standard mindful of First Amendment principles. In this Court's view, that bright-line standard requires that the fax

the FCC's broad-brush approach to closing the loophole lacks any statute-based reasoning, evidentiary support, or explanation of the process the agency employed to reach its seemingly conclusory determination, leaving the order entitled to no deference.

As Judge Chambers noted, however, this Court's determination that it will not defer to the FCC's interpretation of the TCPA is not dispositive, because this Court must then consider the Fax in light of the TCPA's plain text.  In other words, is the Fax a "material advertising the commercial availability or quality of any property, goods, or services"?

"Commercial" is defined in this context as "[o]f, relating to, or involving the buying and selling of goods; mercantile."  *Commercial, Black's Law Dictionary* (11th ed. 2019).  And as Judge Chambers indicated, "Principles of ordinary English grammar dictate that this Court read the adjective 'commercial' to modify both 'availability' and 'quality' of any property, goods, or services."  *PDR V*, 2022 WL 386097, at *4 (citing Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012) ("When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series.")).  Thus, to constitute an unsolicited advertisement under the TCPA, the Fax itself must relate to or involve the buying and selling of property, goods, or services.

The Fax advertises a webinar alone.  ECF 1-2.  While the face of the Fax does not indicate whether there is a charge to attend the webinar, Family Health's complaint, which must be taken as true at this stage, repeatedly asserts that the webinar is free.  ECF 1 ¶¶ 17, 18, 19d.  The Fax makes no reference to any products sold by Pulse8 or any other entity.  ECF 1-2.  The picture on

---

*itself*—not some broader or separate marketing or advertising initiative—must advertise the commercial availability or quality of property, goods, or services in order to constitute an "unsolicited advertisement" in violation of the TCPA.

the Fax depicts hard copy files appearing to be in a file cabinet. *Id.* The Complaint does not allege that either files or file cabinets are products sold by Pulse8. There are two small logos on the bottom of the Fax reading "CareSource" and "Pulse8," without any indicia of what types of companies those are or what products or services, if any, they sell. *Id.* Thus, like the fax Judge Chambers considered in *PDR V*, "the fax itself does not offer any products that Defendants directly sell, nor does it discuss the quality or availability of those products to customers like health care providers." *PDR V*, 2022 WL 386097, at *7.

It is true, of course, that the content of the information Pulse8 shared with webinar attendees remains unknown. Here, then, in contrast to *PDR V*, it is plausible that the Fax may have advertised a webinar that was itself used to market Pulse8's commercial products. But because Family Health apparently did not attend the free webinar, it does not allege any such facts. Instead, Family Health's Complaint includes four theories of how the Fax might constitute an advertisement: (1) because it contains an offer of a "free good or service," namely the webinar; (2) because it advertises a free good or service relating to Pulse8's for-profit business; (3) because it is a "pretext" for Family Health to collect contact information that it can use for future promotional advertising to recipients; and (4) because it allows the recipients to register to win an Amazon gift card by completing a survey. ECF 1 ¶¶ 17-21. Theories one and four can be easily rejected. Theory one fails because, as noted above, an advertisement that merely offers a "free good or service" does not, without more, violate the TCPA—it must relate to the buying and selling of property, goods, or services. And theory four has been rejected by most courts to have considered it, because offering a gift card (or, as here, only the opportunity to win a gift card) in exchange for a survey response seeks information, but does not promote the commercial availability of a good or service. The gift card, in other words, is not for sale. As the Second Circuit describes, faxes

9

seeking survey participation do not advertise the availability of a good or service, but merely the opportunity to exchange goods or services. *See Bruce E. Katz, M.D., P.C. v. Focus Forward LLC*, 22 F.4th 368 (2d Cir. 2022) (affirming district court's decision in *Bruce E. Katz, M.D., P.C. v. Focus Forward LLC*, 532 F. Supp. 3d 170 (S.D.N.Y. 2021)); *see also Podiatry in Motion, Inc. v. Interviewing Servs. of Am., LLC*, No. 20 C 3159, 2020 WL 5909063, at *3 (N. D. Ill. Oct. 5, 2020) ("Limiting the analysis to the language of the statute, as the Court must, the Court agrees that the instant fax is not making something commercially available; rather, it is asking for the recipient to complete a survey.").

Family Health's second and third theories present closer questions. In other words, is it sufficient if the Fax itself does not advertise the commercial availability of any good or service, if it advertises a webinar intended to advance the company's future commercial efforts? In this Court's view, those sorts of ancillary or tangential marketing efforts do not suffice to allege a violation of the TCPA. As Judge Chambers held, these kinds of allegations cannot "create the required underlying commercial nexus where it does not exist within the fax at issue." *PDR IV*, 2022 WL 386097, at *7. The TCPA prohibits sending an unsolicited fax containing "any material advertising the commercial availability of quality of any property, good, or services." It does not prohibit sending a free invitation to an event or seminar that later advertises such commercial availability. Had Congress intended to give the statute broader reach, it could have done so. It could have, for instance, defined an "unsolicited advertisement" to include "complimentary offers leading to the advertising of commercial opportunities," or it could have prohibited for-profit companies from sending any unsolicited fax communications, irrespective of their commercial nature. Congress may have intentionally drafted a narrower prohibition, or it may not have. As the statute is drafted, however, this Court agrees with Judge Chambers that "alleging an underlying

and distant commercial purpose" is insufficient.  *Id.*  This Fax does not fall within the statutory prohibitions because it offers recipients a free webinar and nothing more.

Family Health, of course, urges a more expansive reading of the TCPA's prohibitions, citing to a number of district court cases and the opinion issued by the United States Court of Appeals for the Second Circuit in *Physicians Healthsource*, 847 F.3d 92.  Relying heavily on the 2006 FCC Order, the *Physicians Healthsource* Court adopted that order's "pretext" theory and accordingly required minimal pleading of a commercial nexus.  In that vein, it determined that a plaintiff's allegations that an unsolicited fax promoted a free seminar "discussing a subject that relates to the firm's products or services" sufficed to plausibly allege "that the fax had the commercial purpose of promoting those products or services."  *Id.* at 95.  Of course, *Physicians Healthsource* predated the Supreme Court's opinion in *PDR III*, and it is unclear whether the Second Circuit would afford the 2006 FCC Order the same degree of deference after that ruling. Regardless, this Court is not bound by Second Circuit precedent, and for the reasons stated above believes that merely alleging that a facially non-commercial fax has a pretextual commercial purpose is insufficient to state a claim that the fax is an "unsolicited advertisement" under the TCPA.  Because the Fax is not a "material advertising the commercial availability or quality of any property, goods, or services," Family Health has not plausibly alleged a TCPA violation.

## IV.   CONCLUSION

For the reasons set forth above, Pulse8's Motion to Dismiss, ECF 15, is granted.  Family Health's Complaint is dismissed without prejudice, although if Family Health does not seek leave to amend its complaint within thirty days of the date of this memorandum opinion and order, the dismissal will convert to dismissal with prejudice.  A separate Order follows.

February 28, 2022                                   _____/s/_____
Date                                                      Stephanie A. Gallagher
                                                          United States District Judge

11